IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GREGORY MAURICE SMITH,

        Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

Civil No. 6:15-cv-01625-MA

OPINION AND ORDER

    KATHERINE L. EITENMILLER
    ROBERT A. BARON
    Harder, Wells, Baron & Manning, P.C.
    474 Willamette, Suite 200
    Eugene, OR 97401

        Attorneys for Plaintiff

    BILLY. J. WILLIAMS
    United States Attorney
    JANICE E. HEBERT
    Assistant United States Attorney

1 - OPINION AND ORDER -

1000 SW Third Ave., Suite 600
Portland, OR 97204

COURTNEY GARCIA
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

MARSH, Judge.

      Plaintiff, Gregory Maurice Smith, brings this action for judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and XVI Of the Social Security Act (the "Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

## PROCEDURAL BACKGROUND

      On February 28, 2012, Plaintiff filed an application for DIB and SSI alleging disability beginning January 7, 2012, caused by gout, learning problems, sciatic nerve, breathing problems, and bad teeth. Tr. 100, 111,183-192. Plaintiff's claim was denied initially and upon reconsideration. On January 8, 2014, a hearing was held before an Administrative Law Judge ("ALJ"), at which Plaintiff, Plaintiff's sister Melinda Smith, and vocational expert ("VE") Katie Macy-Powers testified. Tr. 30-75.

      On February 11, 2014, the ALJ issued a decision denying Plaintiff's application. Tr. 8-29. Plaintiff requested review of the ALJ's decision, which the Appeals Council denied on June 25, 2015. Tr. 7, 1-4. Accordingly, the ALJ's decision became the final decision of the Commissioner.

2 - OPINION AND ORDER -

## FACTUAL BACKGROUND

Born in 1954, Plaintiff was 60 years old at the time of the hearing. Tr. 35. Plaintiff has a tenth-grade education. Tr. 35. Plaintiff has past relevant work as a component assembler, lubrication servicer, yard worker, general laborer, salvage laborer, and commercial cleaner. Tr. 65-67.

In addition to his testimony at the hearing, Plaintiff submitted an Adult Function Report. Tr. 231-238. Plaintiff's friend Tomas Bolin submitted a Third Party Function Report and a Statement, his friend Patsy Casey submitted a Statement, and his former employer submitted a Statement. Tr. 221-228, 348, 349, 350. Stephen Pethick, Ph.D., performed a psychological evaluation at the request of Lane County Vocational Rehabilitation, and Plaintiff submitted Dr. Pethick's report. Tr. 353-359. Kris Hallenburg, Ph.D., performed a Comprehensive Psychological Evaluation and submitted an opinion. Tr. 360-365. DeWayde C. Perry, M.D., performed a physical consultative examination and submitted an opinion. Tr. 366-370. State agency consultants Mary Ann Iyer, M.D., and Patricia Kraft, Ph.D. reviewed Plaintiff's records and submitted opinions. Tr. 78-88, 89-99.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. Sec. 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at step five to show that a significant number of jobs exist in the national economy that the claimant can perform. *Yuckert*, 482 U.S. at 141-142; *Tackett*, 180 F.3d at 1098.

The ALJ found that Plaintiff met the insured status requirements of the Act through September 30, 2014. Tr. 13. At step one, she determined that Plaintiff had not engaged in substantial gainful activity since January 7, 2012, the alleged onset date. Tr. 13.

At step two, the ALJ found Plaintiff suffered from the following severe impairments: learning disorder and alcohol abuse in reported remission. Tr. 13. The ALJ found no objective medical evidence to support Plaintiff's claims of gout, right sciatic nerve problems, breathing problems, varicose veins, or hearing problems. Tr. 14.

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment. Tr. 14. The ALJ then found Plaintiff has the following residual functional capacity ("RFC"):

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels subject to the following nonexertional limitations. The claimant is able to perform work with simple, routine, and repetitive tasks. He is able to perform work that does not require assembly or production pace rate. He is able to perform work that allows him to be off task ten percent of the workday. He would do best with verbal instructions instead of written instructions.

Tr. 16.

At step four, the ALJ concluded that Plaintiff retained the ability to perform the requirements of his past relevant work as a general laborer, salvage laborer, or commercial cleaner. Tr. 23. The ALJ also concluded at step five, in the alternative, that Plaintiff retains the ability to perform other work existing in significant numbers in the national economy, such as hospital cleaner and linen room attendant. Tr. 24. Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act. Tr. 25.

## SUMMARY OF ISSUES

Plaintiff argues the ALJ erred in three respects: (1) in discrediting the Plaintiff's testimony; (2) in failing to adequately consider the opinion of Dr. Pethick; and (3) in concluding Plaintiff retains the ability to sustain either past relevant work or "other work" existing in the national economy.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill v. Astrue*, 698 F.3d 1153 1159 (2012) (internal quotations omitted); *Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

# DISCUSSION

## I.  Plaintiff's Credibility

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medications, and relevant character evidence. *Ghanim*, 763 F.3d at 1163. Not all of an ALJ's reasons for discrediting a claimant must be upheld, as long as substantial evidence supports the ALJ's determination. *Carmickle*, 533 F.3d at 1162.

In her decision, the ALJ found that Plaintiff's impairments could reasonably be expected to cause some symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely credible. Tr. 17. The ALJ cited several reasons for

discounting Plaintiff's credibility: the treatment record did not fully corroborate the Plaintiff's testimony, the Plaintiff's claims of debilitated functioning are not consistent with contemporaneous reports of actual functioning, Plaintiff performed work after the alleged onset date, the Plaintiff provided inconsistent statements regarding his alcohol use and about his past work, the fact that Plaintiff left his prior work for reasons unrelated to his impairments, and the fact that Plaintiff received no treatment for any of his alleged impairments.[1]

The ALJ provided specific, clear and convincing reasons, backed by substantial evidence, for discounting the severity of Plaintiff's symptoms. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). First, the ALJ noted Plaintiff's allegations regarding his symptoms were inconsistent with other evidence in the record. Tr. 18. An ALJ may reject testimony inconsistent with the medical and other evidence. *Carmickle*, 533 F.3d at 1161. Plaintiff alleged he could not work because his mind was drifting, and that he could not walk or sit very long due to pain. Tr. 51, 231, 236. However, a physical examination in May 2012 by Dr. Perry yielded normal results, and Dr. Perry assessed no limitations as a result. Tr. 18, 366-70. Moreover, contemporaneous with the Adult Function Report containing allegations of Plaintiff's physical limitations, Plaintiff represented to the Lane County Vocational Rehabilitation Department that he had no physical limitations, and that he was mowing lawns to earn money. Tr. 18, 305-06, 310.

With respect to Plaintiff's reported difficulty maintaining pace and concentration, Dr. Hallenburg found that Plaintiff demonstrated good concentration and pace. Tr. 362. Plaintiff could perform mental calculations (including addition, subtraction, and multiplication) quickly and

---

[1]The ALJ also cited Plaintiff's receipt of unemployment benefits during the time of his alleged disability as a reason to discount his credibility, but the Commissioner does not rely upon that finding before this Court.

correctly. Tr. 20, 363. Plaintiff remembered six digits forward and three backward, and he completed six serial sevens with two errors in thirty seconds. Tr. 363. Dr. Hallenburg noted that although Plaintiff read slowly, he did so accurately, and he demonstrated good retention of the subject matter after 45 minutes. Tr. 363.

Dr. Pethick administered tests with Plaintiff for several hours. Tr. 50. Plaintiff was able to complete the tests and focus during the lengthy examination. Tr. 50. Dr. Pethick noted average verbal comprehension and perceptual reasoning, with low average working memory and borderline process speed, resulting in a full scale IQ of 82 (low average range). Tr. 355. The ADHD questionnaire Dr. Pethick administered revealed only mild symptoms related to difficulties with attention, concentration, or focus. Tr. 355.

The ALJ noted that Plaintiff worked at Garten Services, mowed lawns, and performed odd jobs after the alleged disability onset date. Tr. 13, 19. Evidence that a claimant has intermittently worked part-time, even in jobs that were admittedly too taxing for the claimant, supports the ALJ's denial of benefits. *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992). Evidence in the record shows Plaintiff performed odd jobs for friends and neighbors, which included weekly mowing of lawns, yard care, and light maintenance. Tr. 19, 204, 209, 305, 306, 348, 349. Performance of job duties on a part-time basis, while not sufficient to establish work full time, can constitute a legitimate reason for discounting a claimants assertion of disability. *See Bray v. Commissioner of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding that ALJ properly discounted claimant's credibility when the claimant had worked and sought other work since claimant's disability onset date). This inconsistency is a clear and convincing reason for the ALJ to conclude Plaintiff was not

wholly credible. *Mankin v. Commissioner of Social Sec. Admin.*, Case No. 6:14-cv-01249-MA, 2015 WL 4488339, at \*5 (D. Or. July 22, 2015).

The ALJ also found Plaintiff made inconsistent statements about his alcohol use and about his past work. Tr. 18, 19. A claimant's inconsistent statements are specific and convincing reasons to discount his credibility. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); SSR 96-7p, *available at* 1996 WL 374186, at \*5.[2] This standard specifically applies to inconsistent statements regarding substance abuse. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *see also Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (affirming ALJ's reasoning that inconsistent statements regarding alcohol use supported negative credibility finding).

The ALJ noted that Plaintiff reported differing levels of alcohol use to medical providers and counselors. Tr. 19. For example, in March 2012, Plaintiff reported consuming alcohol on occasion and quitting for a week at a time. Tr. 354. In April, 2012, he stated he drinks three to eight beers, always drinks the "lightest" alcohol he can find, and that he would go weeks and months without alcohol, though he drank four beers the night before the examination. Tr. 361-62. By contrast, in May 2012, Plaintiff reported he drank alcohol every day in various amounts. Tr. 367. Moreover, vocational rehabilitation notes indicated co-workers smelled alcohol on Plaintiff observed him drinking mouthwash, claims Plaintiff denied. Tr. 278, 280-83, 286.

---

[2]I note that the Social Security Administration recently "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy" to "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p; Titles II and SVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14167 (Mar. 16, 2016) (superseding SSR 96-7p). However, the changes to Administration practice articulated in SSR 16-3p could not apply to the ALJ decision at issue before this court, because 42 U.S.C. § 405(g) does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 214-215 & n.3 (1988); *Garner v. Colvin*, 626 Fed.Appx. 699, 701 (9th Cir. 2015).

As to Plaintiff's past work, Plaintiff testified that he lost his job at Garten because he would be assigned a task, such as mowing lawns, and would get sidetracked by pulling weeds. Tr. 42. However, his vocational rehabilitation records demonstrated that Plaintiff refused to do the task assigned him in the manner assigned, demonstrating an uncooperative attitude rather than confusion. Tr. 18, 286. Plaintiff also testified that he could not work at all, yet he stated he performed odd jobs for neighbors and friends and demonstrated an ability and willingness to show up to work on time each and every day. Tr. 18-19, 50, 286, 305, 306, 348, 349, 350.

Plaintiff argues alternate explanations of the inconsistencies cited by the ALJ. However, Plaintiff does not demonstrate that the ALJ's interpretation of the inconsistencies was invalid, and his disagreement with her interpretation is insufficient to overturn the ALJ's determination. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The ALJ further found that Plaintiff left his prior work for reasons unrelated to his impairments. Tr. 18. The fact that a claimant stopped work for reasons other than his impairments is a sufficient basis to disregard his testimony. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). The ALJ noted that Plaintiff lost his job at Garten based on his uncooperative attitude. Tr. 18. Plaintiff also stated that he was laid off from his prior job in 2009, and although he testified that he thought he was not fast enough, he admitted no one ever mentioned anything to him about his speed or performance prior to the lay-off. Tr. 43, 212.

Finally, the ALJ also cited a lack of treatment for Plaintiff's alleged impairments to support his credibility determination. Tr. 18. An "unexplained, or inadequately explained, failure to seek treatment" may be the basis for an adverse credibility finding. *Fair v. Bowen*, 885 F.2d 597, 603 (9t9h Cir. 1989). However, lack of medical treatment due to an inability to afford medical treatment

does not support an adverse credibility determination. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

Here, the ALJ noted that Plaintiff reported that he never saw a physician for either his gout or back pain. Tr. 18. Plaintiff reported, however, that he did not seek medical care because "doctors are for rich people." Tr. 237. Moreover, Plaintiff testified that he did not seek medical care because he was uninsured for twelve years, and that he obtained medical insurance for the first time only seven or eight days before the hearing. Tr. 36, 45. Thus, the record does not support the ALJ's finding that lack of treatment is a legitimate reason to discredit Plaintiff.

Notwithstanding the ALJ's error in determining that lack of medical treatment undermined Plaintiff's credibility, the ALJ's remaining reasons for discounting Plaintiff's testimony provide clear and convincing support for the adverse credibility determination and are supported by substantial evidence in the record. *Carmickle*, 533 F.3d at 1162-63. An examination of the record as a whole and the credibility determination specifically, leaves no doubt that the error regarding the lack of medical treatment does "not negate the validity of the ALJ's ultimate [credibility] conclusion." *Batson*, 359 F.3d at 1197. Accordingly, the ALJ's adverse credibility determination is supported by specific, clear, and convincing reasons, backed by substantial evidence and inferences reasonably drawn from the record. *Molina*, 674 F.3d at 1113.

## II.  Dr. Pethick's Opinion

Plaintiff contends the ALJ erred by giving "little weight" to the opinion of examining psychologist, Stephen Pethick, Ph.D. Specifically, Plaintiff argues the ALJ erred in failing to adopt Dr. Pethick's opinion related to Plaintiff's need for accommodations in the workplace.

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physician's opinions. *Carmickle*, 533 F.3d at 1164. To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *Ghanim*, 763 F.3d at 1161.

When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Thomas*, 278 F.3d at 957. In addition, a doctor's work restrictions based on a claimant's subjective statements about symptoms are reasonably discounted when the ALJ finds the claimant less than fully credible. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195.

On March 13, 2012, Dr. Pethick examined Plaintiff at the request of Lane County Vocational Rehabilitation Services in order to assist with case planning and to help Plaintiff find employment. Tr. 21, 353. Specifically, Dr. Pethick was charged to "assess [Plaintiff's] current level of cognitive functioning, academic achievement and any coexisting conditions." Tr. 353.

Plaintiff reported to Dr. Pethick a previous diagnosis of learning disorder, which poses significant challenges for him in negotiating educational and certain employment settings. Tr. 354. He indicated he had been enrolled in special education classes and that he left school by the eleventh grade. Tr. 354. Plaintiff reported ongoing difficulties related to reading, spelling, writing and mathematical sequencing. Tr. 354.

There were no medical records for Plaintiff at the time, so Dr. Pethick had nothing to review. Tr. 353. Dr. Pethick administered several cognitive tests. Tr. 353. Plaintiff had average verbal

comprehension, average perceptual reasoning, low average working memory, and borderline processing speed. Tr. 355. Plaintiff received a full-scale IQ score of 82, which is in the low average range. Tr. 355. Dr. Pethick summarized Plaintiff's test results as follows:

> [Plaintiff] is a 57-year-old male who generally tested within the "low-average" to "average" range of intellectual functioning, although his verbal comprehension skills are within the average range. He tested in the "average" range on most non-verbal tasks and within the "borderline" to "low average" range on memory tasks and timed visual tasks. There is evidence of a disability, primarily related to language decoding, spelling, and processing speed. This scoring profile is consistent with [Plaintiff's] reported history.

Tr. 358.

Dr. Pethick opined that Plaintiff's stated goal of obtaining work as a mechanic "is realistic." Tr. 358. He further stated that "[i]t appears to be the case that [Plaintiff] has the desire to attempt a certain range of employment settings and he may be a good candidate for certain types of employment." Tr. 358. Dr. Pethick opined that in an employment setting, Plaintiff should not be expected to rely on his reading and/or writing skills, and will have difficulty with any written material above the 4th-5th grade level. Tr. 359. He concluded Plaintiff qualifies for job-site accommodations designed to minimize the impact of his difficulties, which would "vary in different employment settings, but should include the possibility" of the following:

> - extra time to complete job tasks.
>
> - being provided with clear, appropriately written instructions for job tasks.
>
> - pairing written instructions with verbal and visual instruction, making sure to make eye contact while giving instructions.
>
> - being asked to complete only one task at a time.

13 - OPINION AND ORDER -

Tr. 359. Dr. Pethick further opined that Plaintiff would benefit from using a planner/organizer to track daily responsibilities, and that he may want to explore the use of a hand-held tape recorder to help him in remembering important tasks. Tr. 359.

The ALJ gave little or no weight to Dr. Pethick's opinion. Tr. 21. Specifically, the ALJ found Dr. Pethick's opinions related to Plaintiff's need for accommodations for employment are not supported by Plaintiff's cognitive test results, by other psychological examination results, or by Plaintiff's work history. Tr. 21. The ALJ relied upon Dr. Hallenburg's examining opinion, the opinions of the consulting state agency physicians, and the fact that Dr. Pethick's opinion relied heavily on Plaintiff's subjective complaints. Tr. 21.

Examining psychologist Dr. Hallenburg found Plaintiff could read, understand, and remember the content of a paragraph after a 45 minute delay. Tr. 21, 363. Plaintiff was able to perform mental calculations quickly and accurately. Tr. 363. Plaintiff's concentration and pace during the examination were good. Tr. 362. Dr. Hallenburg opined that Plaintiff's job possibilities "may be limited to areas not requiring many academic skills or computer use," and noted that Plaintiff has "good interpersonal and social skills." Tr. 364.

State agency physician Patricia Kraft, Ph.D., reviewed all of Plaintiff's records, including his vocational rehabilitation records and those of Drs. Pethick, Hallenburg, and Perry. Tr. 82-87. Dr. Kraft concluded Plaintiff could perform work, but noted that he "has relative weakness in processing speed and working memory." Tr. 86. As such, "at times his attention and [persistence] and pace will be compromised" and he "should not work in environment w/ speeded tasks." Tr. 86.

Finally, the ALJ noted that Dr. Pethick's opinions relied heavily upon Plaintiff's subjective complaints. Tr. 21. A "physician's opinion of disability 'premised to a large extent upon the

14 - OPINION AND ORDER -

claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan v. Comm'r Soc. Sec. Admin*, 169 F.3d 595, 602 (9th Cir. 1999) (quoting *Fair*, 885 F.2d at 605).

Although Plaintiff disagrees with the ALJ's interpretation of the medical record, "[w]hen the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198. Accordingly, because the ALJ pointed to specific and legitimate evidence in the record contradicting Dr. Pethick's opinion, as well as reliance on Plaintiff's subjective complaints that he found not credible, this Court finds that the ALJ did not err in rejecting Dr. Pethick's opinion.

## III.    Ability to Sustain Past Relevant Work or "Other Work" Existing in the National Economy

Plaintiff argues the ALJ erred in finding that Plaintiff retained the ability to perform past relevant work or, in the alternative, "other work" because the ALJ's hypothetical to the VE was defective. Had the ALJ fully credited Dr. Pethick's opinion regarding accommodations that would probably be needed, Plaintiff contends the VE testimony precludes competitive employment.

As discussed above, I have concluded that the ALJ did not err in giving little weight to Dr. Pethick's opinion or in discounting Plaintiff's credibility. As such, the ALJ did not err in fashioning Plaintiff's RFC. Because the hypothetical posed to the VE included all of those limitations which the ALJ deemed to be credible and consistent with the medical evidence, the ALJ could reasonably rely upon the VE's testimony that Plaintiff retains the ability to sustain either past relevant work or "other work." *Stubbs-Danielson*, 539 F.3d 1169, 1176-76 (9th Cir. 2008); *Valentine*, 574 F.3d at 694.

15 - OPINION AND ORDER -

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to Plaintiff is AFFIRMED.  This action is DISMISSED.

IT IS SO ORDERED.

DATED this 27 day of January, 2017.

Malcolm F. Marsh
United States District Judge

16 - OPINION AND ORDER -